THE executors of John Allen filed their bill, showing that the testator by his will had given great power to his executors over his estate, both real and personal, and directed them to divide and convey his estate, when necessary, as his children came of age or married : That they were all infants; but the eldest had married to Henry Crittenden, to whom the executors had assigned a tract of land and conveyed it accordingly : That the mansion house and plantation was left to the widow of the testator during her life; but thatshehad died, leaving the place unoccupied, and that it would be much injured by falling into the hands of tenants, without any person to take care of it, who had an interest in it, and that it was now most for the interest of the estate, that Crittendon. and wife should surrender, and convey back the lands received by them, and that the executors should assign to them the mansion farm, so that it might be in the care of the fami. ly. But, that as Mrs. Crittenden was still under age, doubts were entertained whether the executors had any power over the estate already allotted to her, eithed with or without her assent, during her minority; and, also, whether if she were of age, the estate conveyed to her could be re.conveyed, so as to re.vest the executors, with power of again allotting it to another child. They further allege, that the estate was so ample as to allow thetoansion farm to one childj and that one inducement to this new arrangement was, the widow of the deceased expected it, and requested it in her will to be done. They further allege, that as the estate belongs to infants, they had a right to ask the opinion and sanction of the chancellor in the premises, and pray that the decree may sanction the execution of the power proposed; and that if the court should'be of opinion that the assent of Mrs. Crittenden and her husband was' requisite, whether before or after she ahould arrive at full age, that the mode should he pointed oat in which that assent should be given, and that *96 such decree might be made as would protect the inter, est of' the infants. Crittenden and wife and the remaining infant heirs, are made defendants.
Crittenden and wife answered, that they were willing tiiat che new arrangements should take place; and the infants, by guardian, deny any knowledge or agency in the transaction, and refer their interest to the decision of tiie court.
The court below gave the opinion, that the re.allotment to Mrs. Crittenden, as contemplated, was proper, and gave an approbation and sanction of the measure ; hut also decided, that Mrs. Crittenden being an infant; could not be divested of her title to the estate first allotted and conveyed to her by the executors, without a deed duly made by her, and acknowledged by her and her husband, as required by law to pass the title of femes covert Further, that the executors under the powers given them by the, will, could accept such deed as to re-vest is.i all the children, the estate al. lotted to Mrs.- Crittenden, subject to the original powers given them by the will, and to allot the same to another child ; but that-the new allotment contemplated, must be made subject to the ratification of Airs. Crittenden, after she arrived to the age of twenty-one years, w hen she could rc-ronvc; the estate heretofore allotted toher; and that the executors might withhold the. new allotment, until that time, and then accept the re.conveyance, and make die, new allotment at the same time. To either of which courses, the court gave its sanction and assent.
To reverse (his opinion, both the heirs and executors have issued a writ of error; the one party assigning it as error in the chancellor thus to give his advice and sanction. and the other, that the chancellor did not extend his opinion so far as to direct the new allotment desired, at once. It is evident, from this statement, that this proceeding is designed to extract from the chancellor his previous advice and determination on an arrangement about to take place, which might produce future contest, and not to ask his decree upon facts and circumstances which had transpired, and which had ripened into an existing cause of complaint or suit.
2. It must be a sound general rule, that it is the business of flu* judiciary in this country, to decide controversies existing, and which have arisen from events *97 fend facts subsequent to the law itself, and riot to give advice to litigants, or to those who wish to avoid liti gation before it arises, or by anticipation to controversies before they arisen and to direct them whether they can or cannot do certain acts without the risk of acting illegally. This is admitted to be correct asa general principle; but it is contended, that the case of infants is submitted to the peculiar care of .the chancellor, and that he is bound, judicially, to direct them,or those who act for them, how td act be. forehand, in cases which may vitally concern them.
wj,ateT may be the peculiar . Pft" a g^cery in Great Brit-am. over in-Estates ;n (iiis c<m¿ try it is ¿judiéial only-
A roUrt of chancery cannot here, Nation of the representalives of inf“nt®> gwe its tracts ^ which they w;sbto dpbele*1*! its province is,as mother legality of them after tfley are
It is true, that courts of chancery in England, took a considerable share in directing the éstates of infants; because, on the abolition of the court of wards, the care which the crown was bound to take, as guardian to infants, resulted tó the court of chancery; and one authority is found, 2 Vernon 224, where a court of equity decreed building-leases for years, of the estate of infants, where it appeared to their advantage, But even this was a ptoper controversy, and atW the courts of chancery in that country began to appoint guardians, it confined itself to judicial controversies and complaints, in which it controlled these guardians and protected the infants in that way ; and we apprebend it would be difficult to find a modern case even there, where guardians or executors were advised or directed by that court, how to execute their duty, in difficult cases, before they had attempted it; anditwould be still more difficult to find a case, where, when they had done their duty rightfully, under one set of cir. cumstances, thatcourt has, upon their request, advis. ed judicially, that they could undo what they had done, and perform it in another way. Without going into a minute investigation of the difference between powers of the chancellor here and in that country, we are disposed to view the .chancellor here, bound to act judicially only with regard to the eojiti oversies of infants, and to redr.ess their grievances, still giving that class of litigants greater latitude, and showing them greater favor than others ; but he never ought, upon a mere application for advice, to give his opinion that acts whioh the representatives of infants wish to do-, will or will not be legal, before they are done. We are, therefore, not disposed to give the advice, which we are requested to give in this instance, or to decide *98 hypothetically now, Whether the acts which these executors wish to do, will or will not be legal. This we feel ourselves bound to reserve, until the acts of the executors may be questioned in some legal shape, in at proper controversy.
An opinion giren by a court of chancery on such application for adviGe, is not a decree• therefore, no appeal or writ of error will lie on it.
3. As we, therefore, refuse any decision upon the case proposed, it results that we ought not td approve of Ihe opinion below, which has advised the applicants; not because wfe approve or disapprove -of the merits of the advice given ; but because we conceive the chancellor ought to havegivcrt none. We view the opinion which he has given, as a mere advice, possessing nogreater force than that of counsel, and that it is not a decree which we can revise, affecting in the least the rights of the parties, »r in any way obligatory upon them. As we conceive that the bill on the one hand, did not present a case on which a decree, aifecting the rights of the parties, could be rendered, and on the other hand, deem the sanction and opinion of no force, we must decide that no writ of error in favor of either side can be maintained, and that each writ must, therefore, be quashed*